**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**
Case No. 3:20-cv-00019-FDW

WILLIAM F. MACKEY,

        Plaintiff,

v.

WELLS FARGO BANK, N.A.,

        Defendant.

                                 /

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. MACKEY FAILED TO CREATE A GENUINE DISPUTE OF MATERIAL FACT BECAUSE HE DID NOT REFUTE WELLS FARGO'S EVIDENCE OR PROPERLY PRESENT OTHER RECORD EVIDENCE THAT IS MATERIAL.

Mackey did not counter Wells Fargo's Statement of Undisputed Material Facts with any citations to the record that show the existence of a genuine dispute as to any material fact. Mackey's failure to dispute Wells Fargo's facts constitutes an admission of those facts. *See* Fed. R. Civ. P. 56(e); *Reid v. Charlotte-Mecklenburg Bd. of Educ.*, No. 314CV00066FDWDSC, 2016 WL 6080545, at *2 (W.D.N.C. Feb. 12, 2016), *aff'd sub nom. Reid v. Charlotte Mecklenburg Sch.*, 675 F. App'x 315 (4th Cir. 2017). Therefore, summary judgment as to all of Mackey's claims is warranted because the relevant, material facts supporting Wells Fargo's Motion for Summary Judgment are undisputed.

In addition, Mackey attempted to offer numerous "facts" in his response that lack evidentiary support and in some instances are contradicted by his deposition testimony. Even if these purported facts were germane to the Court's analysis, they should be rejected for multiple reasons.

Mackey declares that in a meeting with Bob Blood and others in 2017, "Blood explained that Wells Fargo had taken advantage of Plaintiff when he was hired by placing Plaintiff near the bottom of the salary range for a SOSS 3 and that Plaintiff should have been placed at a higher salary rate at the time he was hired due to his qualifications and experience with in the financial services arena." (Dkt. 19 at 4.) When asked at his deposition what Blood said at this meeting, Mackey testified that Blood "did indicate that normally we bring our employees in at about 75 to 90 percent of the pay scale. And he's saying I normally bring mine in at 90 percent." (Dep. 103:17-22.)[1] When asked if Blood said anything else, Mackey answered "No … well, he may have, but I can't recall." (Dep. 104:3-5.) Mackey was also asked if Blood told him "that Wells Fargo had taken advantage of [Mackey]" and he responded, "I don't recall." (Dep. 105:19-25.) Mackey did not testify that Blood had any knowledge of or commented on Mackey's "qualifications and experience in the financial services arena." Mackey's contradiction of his sworn testimony cannot create a genuine dispute of material fact. *Chester v. U.S. Sec. Assocs.*, No. 3:12-CV-00204-FDW, 2013 WL 3712331, at *1 (W.D.N.C. July 12, 2013).

Mackey also contends that "he did not receive a raise from 2010 to 2017 because of budget restraints." (Dkt. 19 at 4, Dkt. 19-6.) Mackey does not attempt to provide any foundation facts or authenticate Exhibit 6 to render it admissible and part of the record. *See* Fed R. Civ. P. 56(c); *Reid,* 2016 WL 6080545, at *2. In addition, this document contains no mention of raises. (Dkt. 19-6.) Moreover, Mackey's deposition testimony and other record evidence conclusively show that Wells Fargo gave Mackey a raise each year after it promoted him to SOSS 3. (Dep. 120:14-122:13; Dkt. 16-4, ¶ 19.)

---

[1] The transcript of Mackey's deposition ("Dep.__") and the deposition exhibits ("Dep. Ex. __") are included in Defendant's Appendix to its Motion for Summary Judgement as Exhibit 1.

Mackey also asserts in his sham Declaration that he began performing SOSS 4 job duties in 2014 and suggests that he should have been promoted to such position then. (Dkt. 19 at 5; Dkt. 19-1.) In contrast, when Mackey was asked at his deposition when he thought he should have been promoted to a SOSS 4, he responded, "In 2016." (Dep. 128:10-14.)

## II.   MACKEY HAS NOT PRESENTED ANY DIRECT EVIDENCE OF DISCRIMINATION.

Mackey argues that he provided sufficient direct evidence of discrimination to avoid summary judgment. "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted). Mackey has not proffered a single statement or other conduct from a decision-maker evidencing any racial or sex animus, and thus his purported evidence is not direct evidence of discrimination.

## III.   MACKEY'S 2010 PAY DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

In its motion, Wells Fargo demonstrated that Mackey's pay discrimination claims based on his salary in the SOSS 3 pay range were meritless. These were the only claims in Mackey's Complaint based on his 2010 salary and served as the foundation for Mackey's assertion that he remains underpaid to this day. Consistent with his Complaint allegations, when asked about these claims at his deposition, Mackey stated he was placed "very low on the pay scale, too low on the pay scale." (Dep. 97:13-17.) Mackey also confirmed he had no other claim based on his initial salary. (Dep. 140:13-141:12.)

Mackey did not respond to Wells Fargo's arguments in his response. Rather, Mackey presented – for the first time in this action – a new theory for his pay discrimination claims.

Mackey now argues that Wells Fargo discriminatorily offered him a promotion to SOSS 3 instead of a "higher" promotion to SOSS 4. (Dkt. 19 at 7-9.)

Mackey's new claims fail for several reasons. First, "a party may not use a brief opposing summary judgment to amend a complaint." *Robinson v. Bowser*, No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013).

Second, these claims are time barred. Pay discrimination claims under Section 1981 have a four-year statute of limitations. Because Mackey's Complaint was filed on December 11, 2019, any claim arising prior to December 11, 2015 is untimely. Mackey's claims also are untimely under Title VII because Mackey recast such claims as a failure to promote; a claim that is based on a "discrete act" that "constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The timeliness of Mackey's original pay discrimination claims does not save his new failure to promote claims. *Id.* at 113. Thus, Mackey's new claims must arise from an act taking place no later than 180 days prior to Mackey's first EEOC charge – March 14, 2018. Mackey's claims based on his promotion in 2010, therefore, are untimely. 42 U.S.C. § 2000e-5(e)(1); *Gean v. Novant Health, Inc.*, No. 3:16-CV-00703, 2017 WL 64748, at *2 (W.D.N.C. Jan. 5, 2017).

Third, Mackey failed to exhaust his administrative remedies for his Title VII claims because neither of his EEOC charges reference a failure to be promoted to SOSS 4 in 2010. (Dep. 82:24-83:12, 93:8-21, Dep. Exs. 13, 15.) *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Further, Mackey failed to establish a *prima facie* case under Title VII or Section 1981 because he did not suffer an adverse employment action. *Davis v. Nissan N. Am., Inc.*, 693 F. App'x 182, 184 (4th Cir. 2017). It is undisputed that Wells Fargo's SOSS 3 offer to Mackey was

a promotion and he received a raise as part of this promotion. (Dep. 56:10-14, Dkt. 16-3, ¶¶ 10-12.) A raise is only an adverse action if there is a *significant* disparity between the plaintiff's raise and those of similarly-situated employees. *Lovell v. BBNT Sols., LLC*, 295 F. Supp. 2d 611, 626 (E.D. Va. 2003). In comparing Mackey's raise with the employees who received SOSS 4 offers, there is no significant disparity: Mackey: $959.03; Little: $1,570.48; Hood: $1,532.15; and Irwin did not receive a raise. (Zerulik Decl. II ¶¶ 5-8.)[2]

Finally, Nancy Mank made offers to the initial members of the Charlotte Tax Cost team "on each applicant's relevant work experience and salary history." (Dkt. 16-3, ¶ 17.) Mackey claims that this reason is pretextual because he had "comparable" experience to Hood, Irwin, and Little and cites to Exhibit 3, a chart purporting to show the employees' respective dates of hire by Wells Fargo or a predecessor. (Dkt. 19 at 18-19, Dkt. 19-3.) Mackey failed to provide any foundation evidence or authenticate this document to make it properly admissible. *See* Fed. R. Civ. P. 56(c); *Reid,* 2016 WL 6080545, at *2. In any event, Mackey's contention that his experience is "comparable" to his co-workers' experience is based on his speculation that Mank considered "relevant work experience" to be nothing more than the years an employee was employed by Wells Fargo.[3] Mackey also fails to account for the significant difference in his prior salary before his SOSS 3 promotion, $32,175.37, as compared to the prior salaries of the SOSS 4s: Hood: $38,466.25; Little: $39,799.92; and Irwin: $42,537.50. (Zerulik Decl. II ¶ 4.) Mackey's pretext argument is an improper attempt to substitute his evaluation of his experience with that of Mank. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007).

---

[2] The Second Declaration of Jonathan Zerulik ("Zerulik Dec. II") is attached as Exhibit 1.
[3] Along these lines, Mackey testified at his deposition that he did not have any personal knowledge regarding his co-worker's employment history. (Dep. 66:13-15, 67:4-6, 21-22.)

- 5 -

## IV.     MACKEY'S FAILURE TO PROMOTE CLAIMS SHOULD BE DISMISSED.

Mackey's failure to promote claims in his Complaint were premised solely on his desire to be promoted to a SOSS 4. *See* Compl. ¶ 25. Mackey also testified at his deposition that the basis for his claims is his belief that he should have been promoted to SOSS 4 in 2016. (Dep. 127:14-128:14.) He further confirmed that this was the only promotion at issue in this action. (Dep. 129:7-11, 130:16-131:2.)

Mackey now claims that he was denied promotions to various positions and attaches several inadmissible documents labeled as applications to his response to identify such positions. (Dkt. 19 at 10, Dkt. 19-5.) Mackey's new theory underlying his failure to promote claims is another improper belated attempt to add new claims that should be rejected by this Court. *See Robinson*, 2013 WL 5655434, at *3.

In addition, these claims are time barred under Title VII because all of Mackey's denied promotions occurred prior to March 14, 2018, which is 180 days prior to his first EEOC charge. 42 U.S.C. § 2000e-5(e)(1); *Gean*, 2017 WL 64748, at *2. Mackey also failed to exhaust his administrative remedies for such claims because neither of his EEOC charges mention these other denied opportunities. (Dep. 82:24-83:12, 93:8-21, Dep. Exs. 13, 15.) *See Chacko*, 429 F.3d at 506.

Even if Mackey could bring his novel promotion claims, he wholly failed to raise a genuine dispute of any material fact as to whether Wells Fargo intentionally discriminated against him.

Mackey contends that Danny Nethken promoted every other member of the Charlotte team (Dkt. 19 at 11-12); such assertion is not supported by the record evidence. Ana Taylor began working for the team as a SOSS 3. (Dkt. 19-3; Dkt. 16 at 6; Dkt. 16-4, ¶ 20.) Taylor was

promoted to SOSS 4 by Laura Richardson in March 2014, almost one year before Nethken became manager of the team in January 2015.[4] (Zerulik Decl. II ¶ 9.) Kathie Little still works in the same position, SOSS 4, that she first held in 2010. (Dkt. 16 at 4, 10.) And there is no record evidence that Nethken was involved in the 2014 promotion of Hood or the 2016 promotion of Irwin to Operations Analyst 4. (Zerulik Decl. II ¶¶ 10-11.) Moreover, Mackey has not presented any record evidence that Nethken was involved in the decision-making process for his denied opportunities. Indeed, Mackey has failed to even identify the decision-maker responsible for denying him these positions. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004).

Mackey also cites a purported statement from yet another inadmissible document in which Brandi Anne Dotson states that Mackey was treated differently. (Dkt. 19 at 8.) The context of this hearsay statement verifies Wells Fargo's reason for the delay of Mackey's SOSS 4 promotion. (Dkt. 19-7 at 3.) In response to this statement, Shannon Claytor noted "[m]anagement feels that their hands are tied based on their budget." *Id.* Thus, Dotson's statement merely confirms that the delay in Mackey's SOSS 4 promotion was only based on Nethken's misunderstanding of his budgetary restrictions and provides no evidence, pretextual or otherwise, that Mackey's race or sex was a factor in the delay. *See Woodley v. Blue Cross Blue Shield of S.C.*, No. 3:06-2180-JFA-JRM, 2008 WL 746996, at *6-8 (D.S.C. Mar. 18, 2008).

Further, Mackey's claim that SOSS 5 Joel Williams refused to train him is immaterial because: (1) it is not an adverse employment action, *see Mayo v. Smith*, No. 1:15-CV-00299, 2016 WL 2894871, at *7 (E.D. Va. May 16, 2016); (2) Williams did not make any decisions

---

[4] Mackey falsely asserts that he began reporting to Nethken in 2014. Nethken became Mackey's manager in January 2015. (Dkt. 16-4, ¶ 23.)

- 7 -

about Mackey's employment and his conduct cannot constitute evidence that Wells Fargo's legitimate reasons for its actions are pretextual; and (3) the allegation that Williams trained all white employees is a conclusory assertion unsupported by any record evidence. (Dkt. 19 at 13.) *See Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir. 2000).

## V. MACKEY'S CLAIMS BASED ON HIS CURRENT SALARY SHOULD BE DISMISSED.

Mackey also improperly recasts his pay discrimination claims based on his current salary. In Mackey's Complaint, he contends that his current salary is "well below market rate for his role." Compl. ¶ 34.

Wells Fargo demonstrated in its motion that these claims are baseless because Mackey receives the highest salary of all SOSS 4s on the Charlotte team. (Dkt. 16 at 10, 20.) Mackey does not dispute this uncontroverted fact. Instead, Mackey now argues that if he had received "more promotions and opportunities," he "could have far exceeded his current role as a SOSS 4." (Dkt. 19 at 20.) This new claim is yet another improper last-ditch amendment to Mackey's lawsuit and fails as a matter of law. *See Robinson*, 2013 WL 5655434, at \*3.

Respectfully submitted,

WELLS FARGO BANK, N.A.

By */s/ Frederick T. Smith*
Frederick T. Smith
North Carolina Bar No. 45229
SEYFARTH SHAW LLP
121 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 925-6023
Facsimile: (704) 559-2425
E-mail: fsmith@seyfarth.com

                                                Ethan Goemann  
                                                North Carolina Bar No. 50731  
                                                SEYFARTH SHAW LLP  
                                                121 West Trade Street, Suite 2020  
                                                Charlotte, North Carolina 28202  
                                                Telephone: (704) 925-6026  
                                                Facsimile: (704) 946-6083  
                                                E-mail: egoemann@seyfarth.com  

                                                Attorneys for Defendant

Date: December 4, 2020

WILLIAM F. MACKEY,

    Plaintiff,

v.                                                     **CERTIFICATE OF SERVICE**

WELLS FARGO BANK, N.A.,

    Defendant.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I filed a true and correct copy of DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

    Alisha S. Brown
    Hall & Dixon, PLLC
    725 East Trade Street, Suite 115
    Charlotte, North Carolina 28202

    */s/ Frederick T. Smith*
    Frederick T. Smith
    North Carolina Bar No. 45229
    Attorney for Defendant