WILLIAM F. MACKEY,

        Plaintiff,

v.                                  **DEFENDANT'S TRIAL BRIEF**

WELLS FARGO BANK, N.A.,

        Defendant.

_____/

      Defendant WELLS FARGO BANK, N.A., by its attorneys and pursuant to Section 4(d) of the Court's March 6, 2020 Case Management Order (Doc. 9), submits its Trial Brief.

## I.    INTRODUCTION

      Plaintiff William F. Mackey is a current employee of Wells Fargo.  Since his promotion to Securities Operations Service Specialist ("SOSS") 4 in 2019 - which Wells Fargo made retroactive to March 5, 2017 - Mackey has been the highest paid SOSS 4 employed by the Bank on its Charlotte Tax Cost team.  Mackey, however, contends that he has been denied promotion to SOSS 4 and other positions.  Mackey also claims that he remains underpaid, and he has pursued (through two sets of lawyers) ever-shifting claims of intentional race and sex discrimination in this action.  As will become readily apparent at trial, the only constant is that Mackey's claims are not supported by any evidence, direct, circumstantial, or otherwise, of intentional bias, and the entire foundation of his lawsuit is premised on the sole fact that he is an African-American male.

## II.    SUMMARY OF RELEVANT EVIDENCE

### A.    Mackey's Promotion to Securities Operations Service Specialist 3.

Mackey began working for financial institutions that eventually became Wells Fargo on April 27, 1998.  After Wells Fargo & Company merged with Wachovia Corporation on December 31, 2008, Mackey learned that he was going to be laid off.  To avoid being laid off, Mackey applied for positions internally at Wells Fargo.  Wells Fargo hired - and promoted - Mackey to SOSS 3 in 2010.

As a SOSS 3, Mackey was responsible for updating assets for trust accounts and estate accounts.  Each level of SOSS is a different position, with different job responsibilities and different levels of compensation.  SOSS 4s and 5s work on more complex work requests or tasks than SOSS 3s.  SOSS 4s and 5s have more experience, take on more responsibility over staff, and assume greater leadership roles in department projects than SOSS 3s.  For example, one of a SOSS 4's job responsibilities is to provide coaching and review work done by lower level SOSS team members, including SOSS 3s.  Similarly, SOSS 5s take on more management responsibilities, including writing procedures and providing direction for the team, and contribute to production or workflow improvements.

Mackey received an annual raise every year he was a SOSS 3, from 2011 to 2018, as well as "off-cycle" wage increases as detailed below:

| Date | Raise | Raise (Percentage) | New Salary |
|------|-------|--------------------|------------|
| March 2011 | $662.69 | 2% | $33,797.09 |
| March 2012 | $490.06 | 1.5% | $34,287.15 |
| March 2013 | $609.89 | 1.8% | $34,847.04 |

| | | | |
|---|---|---|---|
| March 2013 | $339 (off cycle) | 1% | $35,236.04 |
| March 2014 | $698.32 | 2% | $35,934.36 |
| March 2014 | $139.66 (off cycle) | 0.4% | $36,074.02 |
| March 2015 | $721.49 | 2% | $36,795.51 |
| March 2016 | $551.93 | 1.5% | $37,347.44 |
| March 2017 | $936.00 | 2.5% | $38,283.44 |
| March 2018 | $1,123.20 | 2.9% | $39,406.64 |
| April 2018 | $1,382.16 (off cycle) | 3.5% | $40,788.80 |

**B.    Wells Fargo Salary Practices.**

Wells Fargo has a salary range for most positions, including the SOSS 3 and SOSS 4 jobs, called Base Salary Data.  The Base Salary Data contains three numbers: the threshold salary, which is the minimum salary for a position; the base MRP salary, also referred to as the midpoint; and the maximum salary.  Wells Fargo sets salaries based on a percentage of the midpoint salary for a position.  It is rare for a Wells Fargo employee to be paid above the midpoint for a position.

Wells Fargo human resources, department leadership, and compensation analysts review employees' salaries on a department-wide basis to determine if they fall below eighty percent of the midpoint.  When this occurs, the Bank provides "off-cycle" raises to increase the team members salary to that level.

**C.    Mackey's Supervisor's Efforts to Improve Mackey's Job Performance and Promote Him.**

Operations Manager Danny Nethken began managing the Charlotte Tax Cost team and became Mackey's supervisor in January 2015.  Soon after Nethken became Operations Manager, he informed Mackey in a one-on-one meeting that he would need to improve his job performance before Nethken would consider promoting him to SOSS 4.

After two years of coaching Mackey and working on his numbers, at an end-of-year meeting in 2016, Nethken told Mackey that he had improved his performance. Nethken recommended Mackey for a promotion, but he was told that due to Mackey's salary at the time, he would need to receive an 8 to 10% increase in order to be eligible to be promoted to SOSS 4. Nethken also was told there was not enough room in the budget to give Mackey such a raise.

Because he could not promote Mackey, Nethken awarded Mackey a larger than average raise - 2.5% - which was also one of the largest increases in the department.  Then, in 2018, Nethken gave Mackey the largest percentage raise on the Charlotte team -  2.9%.  These large increases were intended to raise Mackey's salary so he could be promoted to SOSS 4.

**D.    Mackey's Charges of Discrimination.**

Mackey never made an internal complaint of discrimination at Wells Fargo.  Mackey's first complaint of discrimination was his Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2018 in which he made race and sex discrimination claims based on the salary he received eight years earlier when he was promoted to SOSS 3 in 2010.  The EEOC dismissed the charge on the same day because it determined that the statute of limitations had run on the claims.

4

Mackey filed a second Charge of Discrimination with the EEOC on December 3, 2018, again making race and sex discrimination claims based on the salary he received when he was promoted to SOSS 3 in 2010. The EEOC issued a Dismissal and Notice of Rights to Mackey on September 13, 2019 in connection with his second charge.

### E. Wells Fargo's Investigation of Mackey's Claims.

The Wells Fargo Employee Relations team investigated Mackey's claims in his EEOC charges. Senior Investigations Consultant Shannon Claytor conducted the investigation in late 2018 and early 2019.

During Claytor's interview of Mackey, Mackey complained that Nancy Mank and the recruiter who made him the salary offer for his promotion to SOSS 3 back in 2010 discriminated against him due to his race and sex. These were the only two individuals who Mackey claimed discriminated against him. Mackey told Claytor that he believed that his initial salary was discriminatory based on his race and sex because he was the only black male hired for the Charlotte Tax Cost team. Mackey did not provide any other evidence to Claytor for his discrimination claims.

When Claytor interviewed Nethken, he told Claytor that Mackey deserved to be promoted because of his progression in 2017 and 2018, but he "just could not make it work because of the budget."

Claytor concluded that there was no evidence of discrimination in connection with Wells Fargo's initial salary offer to Mackey, but that Mackey had been working at the level of a SOSS 4 since 2017 and the department management's belief about budgetary constraints was the only issue that prevented Mackey from a "growth" promotion to SOSS 4. Claytor brought her concerns to Human Resources Business Partner Sara Barten. After they were informed that

Mackey was performing at a SOSS 4 level, while still working as a SOSS 3, Barten and management in Wells Fargo's Fiduciary Tax Department agreed that the team's budget should not have stalled Mackey's promotion to SOSS 4. They took immediate action, granting Mackey an off-cycle promotion and pay raise. These actions were retroactive effective March 5, 2017, because it was the date promotions and raises went into effect for 2017. Altogether, Wells Fargo took the following course of corrective action: (1) it promoted Mackey to a SOSS 4 effective March 5, 2017; (2) it increased Mackey's salary to $50,733 effective March 5, 2017, which was 90% of the midpoint for a SOSS 4; (3) it paid Mackey the difference between his actual pay and his retroactive salary effective March 5, 2017 – a sum of $21,788.31 in retroactive pay; and (4) it gave Mackey a 1.68% merit increase effective March 3, 2019 to $51,584.

With his retroactive promotion and pay increases, Mackey was the highest paid of the five SOSS 4s on the Charlotte team from 2017 to 2021. The other four SOSS 4s were Cecile Johnson, Ana Taylor, Kathie Little, and Tracy Prince. The five SOSS 4s' salaries from 2017 to 2021 are set forth below:

| Name (Race and gender) | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| William Mackey (Black male) | $50,733.00 | $50,733.00 | $51,584.00 | $52,582.40 | $53,248 |
| Cecile Johnson (White female) | $47,856.25 | $48,563.45 | $49,291.45 | $50,269.05 | $51,309.05 |
| Ana Taylor (Hispanic female) | $45,595.01 | $46,385.41 | $47,321.41 | $48,985.41 | $51,439.81 |

6

| | | | | |
|---|---|---|---|---|
| Kathie Little (White female) | $47,302.15 | $48,238.15 | $49,215.75 | $50,255.75 | $51,295.75 |
| Tracy Prince (White female) | $45,880.80 | $47,024.80 | $48,064.50 | Not applicable; no longer employed as a SOSS 4 | Not applicable; no longer employed as a SOSS 4 |

## III.  LEGAL ARGUMENT

### A.  Mackey Cannot Assert Claims That Are Time Barred.

On December 11, 2020, the Court partially granted Wells Fargo's Motion for Summary Judgment to the extent Plaintiff sought to assert "claims under Section 1981 that are outside the four-year statute of limitations, including Plaintiff's pay prior to December 11, 2015."  As to Mackey's other discrimination claims, the Court dismissed any "claims under Title VII that occurred prior to March 14, 2018."  (Doc. 21 at 2-3.)

Mackey should not be allowed to assert any claims arising prior to December 11, 2015 or proffer any evidence regarding such time-barred claims at trial.  *See, e.g., Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 5439156, at *2 (E.D.N.C. Nov. 8, 2011) ("Of course the parties cannot discuss [plaintiff's] dismissed claims, or introduce evidence on the dismissed claims.").  Accordingly, Mackey's remaining claims are that: (1) his salary since December 11, 2015 was racially discriminatory in violation of Section 1981; (2) the timing of his promotion to SOSS 4, retroactively effective on March 5, 2017, was racially discriminatory in violation of Section 1981; and (3) his salary since March 14, 2018 has been discriminatory on the basis of his race and sex in violation of Title VII.  Wells Fargo, therefore, has filed a motion *in limine* to exclude any evidence of Mackey's time-barred claims.

**B. Mackey Cannot Assert Claims That Were Raised for the First Time in His Response to Wells Fargo's Motion for Summary Judgment.**

Mackey's Complaint alleged only <u>one</u> job to which he had applied and had been denied: SOSS 4. (Doc. 1-1 ¶ 25.) There is no reference in his Complaint to any other job opportunity Mackey sought but was denied. (Doc. 1-1.)

Notably, when Wells Fargo asked Mackey in its Interrogatory No. 8 to identify the "peers" related to the promotion allegations in his Complaint, he identified only individuals who were in SOSS roles. (Pl.'s Resp. to Def.'s Interrogs. at 7.)

Further, at Mackey's deposition, after discussing when he thought he should have been promoted to SOSS 4, he was asked directly: "*Are you claiming that you were denied any other promotions because of your race and/or your sex in your lawsuit against Wells Fargo*?" (Dep. 129:7-10.)[1] Mackey replied, "*No*." (Dep. 129:11.) Mackey then was asked, "*Are you claiming that you were denied any other promotions because of your race in this lawsuit*?" (Dep. 130:16-17.) Mackey replied, "*No*." (Dep. 130:18.) Mackey also was asked, "*Are you claiming that you were denied any other promotions because of your sex in this lawsuit*?" (Dep. 130:19-20.) Mackey replied, "*I can't say*" and when asked to explain further, he said "*Because, I mean, this is the only promotion I've been denied*." (Dep. 130:21-131:2.) When pressed further about whether he thought he should have been placed into another position and that he was denied some other position at Wells Fargo because of his race or his sex, Mackey testified, "*I can't say that.*" (Dep. 131:22-132:1.)

Notwithstanding Mackey's own Complaint, his discovery responses, and his deposition testimony concerning the scope of his failure to promote claim, Mackey raised new promotion

---

[1] Cited pages of Plaintiff's deposition transcript are attached hereto as Exhibit 1.

claims for the first time in response to Wells Fargo's Motion for Summary Judgment, alleging that he should have been awarded various other promotions. (Doc. 19 at 13.) Because Mackey did not pursue such claims until he opposed the Bank's dispositive motion, and because Mackey has not presented any evidence thus far that these positions would have been a promotion from his SOSS 3 position, who else applied for and may have received those jobs, who the decisionmakers were, when the decisions were made, or the reasons for any of these decisionmakers' decisions, he cannot pursue such claims now at trial. Accordingly, Wells Fargo also has filed a motion *in limine* to exclude evidence of Mackey's latent promotion claims.

Courts routinely exclude evidence of claims asserted for the first time during briefing on a motion for summary judgment. *See Harris v. Reston Hosp. Ctr.*, LLC, 523 F. App'x 938, 946 (4th Cir. 2013) (holding district court did not err in refusing to consider claim asserted "for the first time in opposing summary judgment" because it "amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the defendant"); *Robinson v. Bowser*, No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) ("a party may not use a brief opposing summary judgment to amend a complaint").

Mackey's attempt to assert new failure to promote claims is tantamount to a "constructive amendment of the complaint" which "would seriously undermine the fairness of the litigation and unfairly prejudice [Wells Fargo]." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 795–96 (E.D. Va. 2007), *aff'd*, 562 F.3d 295 (4th Cir. 2009). Allowing these new claims at trial would severely prejudice Wells Fargo, which was not on notice of such claims during the pleading and discovery phases of this action, and amount to trial by ambush. It would "undermine the complaint's purpose" to guide discovery and "put[] the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Harris*, 523

F. App'x at 946 (citing *Coleman*, 232 F.3d at 1292–93). Therefore, per Wells Fargo's motion *in limine*, Mackey should be barred from asserting at trial that he was discriminatorily denied other promotions other than the delayed promotion to SOSS 4.

### C.    Mackey's Race and Sex Discrimination Claims Are Without Merit and Will Fail.

Mackey has no direct evidence of discrimination to support his delayed promotion and wage discrimination claims. "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted). Mackey has not proffered thus far a single statement or other conduct from a decisionmaker evidencing any racial or sex animus, nor will he be able to do so at trial.

### 1.    Mackey Does Not Have Any Evidence That, But For His Race, He Would Have Been Promoted to SOSS 4 at an Earlier Date.

Mackey claims that his delayed promotion to SOSS 4 was motivated by his race. The date on which Mackey's delay of promotion claim must arise, prior to March 5, 2017, falls only within the time frame for Mackey's Section 1981 claim. Mackey consequently "bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014, 206 L. Ed. 2d 356 (2020). Mackey must "ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019.

To establish a *prima facie* failure to promote claim, Mackey must show that: "(1) [he] is a member of a protected class; (2) [his] employer had an open position for which [he] applied or sought to apply; (3) [he] was qualified for the position; and (4) [he] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). Mackey cannot meet the fourth element of this claim because he cannot present any evidence to prove that Wells Fargo discriminated against him on the basis or his race or sex.

Mackey's discrimination claims will fail because he cannot proffer any evidence that Danny Nethken, his former manager who is now deceased, acted with intent to discriminate against him. Mackey testified that Nethken tried to promote him at the end of 2016, and that Nethken was told he would need to first increase Mackey's pay before he could be promoted to a SOSS 4. This evidence does not create a plausible inference of discrimination, and Mackey cannot establish a claim that the Bank unlawfully failed to promote him.

Similarly, Mackey will not be able to show that, but for his race, Mackey would have received a promotion to SOSS 4 prior to March 5, 2017. Wells Fargo's witnesses will explain that the Bank retroactively promoted Mackey to the earliest instance, 2017, where Nethken determined Mackey first was capable of handling SOSS 4 work. Mackey will not be able to present any evidence that he was capable of performing SOSS 4 work prior to 2017, other than his own personal evaluation of his work performance. This is insufficient to establish discrimination and flies in the face of 4th Circuit precedent that "unsubstantiated allegations and bald assertions concerning [his] own qualifications … fail to disprove [Wells Fargo's] explanation or show discrimination." *Evans*, 80 F.3d at 960.

Moreover, Mackey does not have any evidence to show that a similarly situated team member was treated differently. There is no evidence that Nethken promoted any other member of the Charlotte Tax Cost team who was at the same point in the pay range as Mackey. Mackey's unsupported speculation that Charlotte employees were promoted by Nethken will be

contradicted by Wells Fargo's evidence, including that Ana Taylor was promoted by another manager, Laura Richardson, and that Kathie Little never received a promotion.

The fact that Nethken could not promote Mackey, is not, by itself, evidence of discriminatory intent. Instead, Mackey must show that, but for his race, Nethken would have promoted him earlier than March 5, 2017. *Id.*[2] Because Mackey cannot proffer such evidence, his delayed promotion claim will fail at trial.

### 2. Mackey Cannot Present Any Evidence That His Race or Sex Was a Factor in Wells Fargo's Decisions About His Compensation.

To make out a *prima facie* case for disparate compensation, Mackey must show that he: "(1) 'is a member of a protected class'; (2) 'was paid less than an employee outside the class'; and (3) 'the higher paid employee was performing a substantially similar job.'" *Bragg v. Bd. of Governors*, No. 5:14-CV-887-F, 2017 WL 384311, at *5 (E.D.N.C. Jan. 25, 2017) (quoting *Kess v. Mun. Emps. Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004)). Mackey has two surviving disparate compensation claims: (1) the pay he received as a SOSS 3 from December 11, 2015 until his promotion to SOSS 4 on March 3, 2019; and (2) the pay he received as a SOSS 4 from the date of his backdated promotion, March 5, 2017, to the present.

#### a. Mackey has no evidence that but for his race, he would have received a higher salary as a SOSS 3 from December 2015 to March 2019.

From December 11, 2015 to March 3, 2019, Mackey worked for Wells Fargo as a SOSS 3. He received raises each year in 2016, 2017, and 2018 and an additional off cycle raise in 2018

---

[2] Moreover, any claim for failure to promote after that date is mooted by Mackey's retroactive promotion and pay raise. *See Doe v. Kidd,* 501 F.3d 348, 354 (4th Cir. 2007) ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

through the same raise policy as all other team members of the Charlotte Tax Cost team.

Mackey cannot make out a claim of disparate compensation because he will not be able to

provide any evidence that he would have received a higher salary as a SOSS 3 after December

11, 2015 but for his race (Section 1981) or that his race was a motivating factor (Title VII) in

Wells Fargo's decisions regarding his pay. Mackey's claim rests entirely on his opinion on the

salary he should have received, but as this Court has observed, "it is the perception of the

decision maker which is relevant, not the self-assessment of the plaintiff." *Cupples v. AmSan,*

*LLC d/b/a Maint. Supply Co.*, No. 3:04-CV-574-FDW, 2007 WL 1075178, at *8 (W.D.N.C.

Mar. 30, 2007) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Mackey

has no evidence that his manager from 2015 to 2020, Nethken, made any decisions regarding

Mackey's salary because of Mackey's race. Mackey's claims of intentional race discrimination

based on the wages he received from December 11, 2015 to March 3, 2019, fail under any

standard, and, therefore, Wells Fargo will prevail on such claims at trial.

> **b.    Mackey's claim concerning his SOSS 4 salary, from March 5, 2017 to present, fails because he has the highest salary of all the SOSS 4s.**

Wells Fargo promoted Mackey to SOSS 4 on March 3, 2019, retroactive to March 5,

2017. In connection with the promotion, Wells Fargo raised Mackey's salary to $50,733

effective March 5, 2017, which was 90% of the midpoint for a SOSS 4 and paid Mackey the

difference between his actual pay and his retroactive salary – a sum of $21,788.31 in retroactive

pay. Wells Fargo also gave Mackey a 1.68% merit increase effective March 3, 2019 that raised

his annual salary to $51,584.

Wells Fargo will demonstrate at trial that, starting from the effective date of Mackey's

retroactive promotion to SOSS 4 on March 5, 2017, and continuing to the present, Mackey is the

highest paid SOSS 4 on the Charlotte team. There is no similarly situated SOSS 4 with a lower salary than Mackey, which dooms Mackey's claim. *See Spencer*, 919 F.3d at 207. Mackey, therefore, will not be able to make out a wage discrimination claim based on his SOSS 4 salary.

### D. Mackey's Potential Damages are Limited.

#### 1. Mackey is not entitled to back pay damages while on medical leave.

Even if Mackey is successful in proving one of his discrimination claims and is awarded back pay at trial, such award should exclude the time period in which he was out on medical leave. Mackey requested and was granted a medical leave of absence by Wells Fargo on October 10, 2020, and returned to work on March 8, 2021.

"Generally, a Title VII plaintiff can recover back pay only for the period the plaintiff is 'available and willing to accept substantially equivalent employment' elsewhere; courts exclude periods where a plaintiff is unavailable to work, such as periods of disability, from the back pay award." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999); *see White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1088 (4th Cir. 1977) (holding if plaintiff was not able to work from 1967 to 1971, he should not receive back pay for those years); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995) ("[A]s a general rule ... an employer who has discriminated need not reimburse the plaintiffs for salary loss attributable to the plaintiffs and unrelated to the employment discrimination") (internal quotation marks omitted).

Wells Fargo provided Mackey with medical leave based on his doctor's statements that he is unable to work. Mackey cannot proffer any evidence that his medical leave was caused by Wells Fargo's alleged conduct. At his deposition, Mackey testified that no healthcare professional told him that his Type 2 diabetes, hypertension, stress, or high blood pressure was a

result of Wells Fargo's treatment of him. (Dep. 156:10-157:22.) Accordingly, Mackey should be barred from attempting to recover back pay for the time he was on medical leave.

### 2. Mackey has no evidence supporting an award for emotional distress damages.

If Mackey were to somehow prevail on his discrimination claims at trial, he would still be unable to present evidence to support an award of compensatory damages for emotional distress. The Fourth Circuit has "warned that '[n]ot only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims.'" *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)). "[A]lthough specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to 'reasonably and sufficiently explain the circumstance of [the] injury and not resort to mere conclusory statements.'" *Sloane,* 510 F.3d at 503 (quoting *Price*, 93 F.3d at 1251). "[S]eriatim recitations of 'depression' or 'hurt feelings' as evidence of emotional distress offered by the plaintiff fail to meet this standard." *Price*, 93 F.3d at 1251. "[T]he evidence of the emotional distress must be demonstrable, genuine, and adequately explained." *Price,* 93 F.3d at 1251–52. The Fourth Circuit identified the following factors in analyzing the amount of an emotional distress award:

> the factual context in which the emotional distress arose; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; the degree of such mental distress; mitigating circumstances, if any; physical injuries suffered due to the emotional distress; medical attention resulting from the emotional duress; psychiatric or psychological treatment; and the loss of income, if any.

*Sloane* 510 F.3d at 503 (quoting *Price*, 93 F.3d at 1254).

Mackey cannot present any medical evidence of harm attributed to Wells Fargo's conduct. As discussed above, *supra* Section III.D.1, Mackey affirmed in his deposition that no health care professional attributed his medical conditions to Wells Fargo's treatment of him. Mackey's evidence consists solely of "conclusory statements" that he has been wronged and fails to specify how his "alleged distress manifested itself" and thus will be insufficient to support an emotional distress claim. *E.E.O.C. v. Carter Behav. Health Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *6 (E.D.N.C. Oct. 7, 2011), *report and recommendation adopted*, No. 4:09-CV-122-F, 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011) (citing *Bryant v. Aiken Regional Med. Ctr., Inc.*, 333 F.3d 536, 546–47 (4th Cir. 2003)).

### 3. Mackey is not entitled to punitive damages.

#### a. Mackey cannot show that Wells Fargo acted with malice or reckless indifference to Mackey's rights.

"Punitive damages are allowed in a Title VII action only under limited circumstances." *U.S. EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 151 (4th Cir. 2017). "Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).

As the Fourth Circuit recently explained:

> Title VII authorizes punitive damages only when a plaintiff makes two showings. First, the plaintiff must show that the employer "engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) ...." 42 U.S.C. § 1981a(a)(1). Second, the plaintiff must show that the employer engaged in the discriminatory practice "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). That is, "an employer must at least discriminate in the

> face of a perceived risk that its actions will violate federal law[.]"
> *Kolstad*, 527 U.S. at 536.

*Ward v. AutoZoners, LLC*, 958 F.3d 254, 263 (4th Cir. 2020).[3]  In other words, Mackey must show that Wells Fargo "actually knew of or perceived the risk that its conduct would violate Title VII, and then acted despite that subjective knowledge." *Consol Energy, Inc.*, 860 F.3d at 151.

Even if Mackey were to prevail on his Title VII or Section 1981 claims at trial, Mackey will not be entitled to punitive damages because he cannot proffer any evidence whatsoever that Nethken or any of Mackey's other managers were aware that the wages he was paid or his promotional opportunities, delayed or otherwise, violated or potentially violated Mackey's rights under Title VII and Section 1981, much less that Nethken and perhaps others then acted in contravention of such knowledge.  Rather, Wells Fargo's witnesses will establish that when Nethken first became Mackey's manager, Mackey was a low performer, and Nethken attempted to coach Mackey to improve his skills and performance.  When Mackey began performing at a SOSS 4 level, in 2017, Nethken wanted and tried to promote him but was told that due to Mackey's salary, he would need to receive a significant increase to be eligible to be promoted to SOSS 4, and Nethken could not provide such a large raise in one year to Mackey due to budgetary constraints.  Nethken gave Mackey one of the largest increases on the Charlotte team in 2017, 2.5%, and the largest percentage raise on the Charlotte team in 2018, 2.9%, as part of his effort to raise Mackey's salary and make him eligible for a promotion.  Because Mackey cannot present any evidence that Nethken believed that he was violating Mackey's civil rights,

---

[3] This punitive damages standard also applies to claims for punitive damages under Section 1981.  *E.E.O.C. v. Joe's Old Fashioned Bar-B-Que, Inc.*, No. 518CV00180KDBDSC, 2020 WL 3128599, at *7 (W.D.N.C. June 12, 2020).

Nethken did not act with malice or reckless indifference to justify an award of punitive damages against Wells Fargo. *See Consol Energy, Inc.*, 860 F.3d at 151 (the question is "whether [plaintiff's] management subjectively appreciated that its efforts [to not violate plaintiff's rights] were inadequate, or at least that there was a risk of inadequacy.").

### b. Mackey cannot impute liability to Wells Fargo.

Even if Nethken did act with malice or reckless indifference to Mackey's rights, which he clearly did not, "'an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with' the applicable federal law." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 371–72 (4th Cir. 2008) (quoting *Kolstad*, 527 U.S. at 545). "This good-faith exception rests on the notion that the existence and enforcement of an anti-discrimination policy shows that the employer itself 'never acted in reckless disregard of federally protected rights.'" *Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 445 (4th Cir. 2000) (quoting *Kolstad*, 119 S. Ct. at 2129). "[I]n order to avoid liability for the discriminatory acts of one of its management officials, an employer maintaining such a compliance policy must also take affirmative steps to ensure its implementation." *Fed. Express Corp.*, 513 F.3d at 374.

There is no basis to impute liability for punitive damages to Wells Fargo because it will demonstrate at trial that it has made good faith efforts to comply with Title VII and Section 1981. Wells Fargo's Affirmative Action, Equal Employment Opportunity, and Diversity & Inclusion Policy prohibits discrimination on the basis of race, sex, and other statuses protected by law. In addition, Wells Fargo will further demonstrate at trial that it implements its anti-discrimination policies in good faith; managers are required to take anti-discrimination training and there is a procedure that has multiple avenues for employees to report complaints of discrimination.

Moreover, Wells Fargo investigated Mackey's complaints of discrimination in his EEOC charges and, despite finding no evidence of discrimination, Wells Fargo took corrective measures to retroactively promote Mackey and made him the highest paid SOSS 4 on the Charlotte Tax Cost team. *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 548–49 (4th Cir. 2003) (rejecting punitive damages liability where employer "had extensively implemented organization-wide Equal Employment Opportunity Policy," established grievance policy encouraging reporting of claims, informed employees of antiretaliation stance, developed diversity training program, and voluntarily monitored departmental demographics to ensure diversity); *Marcano–Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 254 (1st Cir. 2000) (holding that court properly declined to submit punitive damages question to jury, where record was "replete" with evidence that employer had "instituted policies prohibiting any type of discrimination, trained its personnel to ensure equal treatment of employees with disabilities, and took good faith efforts to comply with the ADA"). Accordingly, because Wells Fargo has, for years, implemented numerous measures that demonstrate its commitment to compliance with Title VII and Section 1981, Wells Fargo should not be held liable for punitive damages in this action.

## IV. CONCLUSION

For the foregoing reasons, Mackey will not be able to demonstrate any viable claims at trial and judgment should be entered in Wells Fargo's favor.

Respectfully submitted,

WELLS FARGO BANK, N.A.


By: */s/ Frederick T. Smith*
     Frederick T. Smith
     North Carolina Bar No. 45229
     SEYFARTH SHAW LLP
     121 West Trade Street, Suite 2020
     Charlotte, North Carolina 28202
     Telephone: (704) 925-6023
     Facsimile:  (704) 559-2425
     E-mail: fsmith@seyfarth.com

     Ethan Goemann
     North Carolina Bar No. 50731
     SEYFARTH SHAW LLP
     121 West Trade Street, Suite 2020
     Charlotte, North Carolina 28202
     Telephone: (704) 925-6026
     Facsimile: (704) 946-6083
     E-mail: egoemann@seyfarth.com

     Gerald L. Pauling, *admitted pro hac vice*
     SEYFARTH SHAW LLP
     233 W. Wacker Drive, Suite 8000
     Chicago, Illinois 60606-6448
     Telephone: (312) 460-5000
     Facsimile:  (312) 460-7000
     E-mail:  gpauling@seyfarth.com

     Attorneys for Defendant

Date:  July 5, 2021

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
Case No. 3:20-cv-00019-FDW

WILLIAM F. MACKEY,

        Plaintiff,

v.                                    **CERTIFICATE OF SERVICE**

WELLS FARGO BANK, N.A.,

        Defendant.

_____/

        I hereby certify that on July 5, 2021, I filed a true and correct copy of Defendant's Trial Brief with the Clerk of the Court using the CM/ECF, system which will send electronic notification of such filing to the following counsel of record:

                      Alesha S. Brown
                      Justice In Action Law Center
                      521 Briar Creek Road
                      Charlotte, North Carolina 28205

                                    */s/ Frederick T. Smith*
                                    Frederick T. Smith
                                    North Carolina Bar No. 45229
                                    Attorney for Defendant